IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
01 DEC 13 PM 3:49
ND DISTRICT COURT
OF ALABAMA

| | |
|---|---|
| LORENE E. BRASWELL by and through ) | |
| BARBARA MONROE, her daughter and ) | |
| next friend ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. CV_____ |
| ) | |
| TRANSAMERICA LIFE INSURANCE ) | CV-01-J-3211-NW |
| COMPANY; ANTHONY PETITTI ) | |
| ) | |
| Defendants ) | |

## NOTICE OF REMOVAL

Comes now the defendant Transamerica Life Insurance Company ("Transamerica"), formerly known as PFL Life Insurance Company, and pursuant to 28 U.S.C. §1441(a), hereby removes this case to the United States District Court for the Northern District of Alabama, Northwestern Division, and in support thereof states as follows:

1.  This civil action by plaintiffs, Lorene Braswell and Barbara Monroe, against Defendants was filed on October 5, 2001, in the Circuit Court of Lauderdale County, Alabama, being Civil Action No. CV-01-650, where it is now pending.

2.  Defendant Transamerica was served with the Summons and Complaint by certified mail on November 20, 2001. Defendant PFL changed its name to Transamerica effective March 1, 2001. Defendant Anthony Pettiti has not been served with process.

3.  In accordance with 28 U.S.C. §1446(b) this Notice of Removal is being filed within thirty (30) days after receipt by Defendants through service of process, of a copy of the initial pleading setting forth the claims for relief upon which this action or proceeding is based.

yet been served with process; however, he has indicated to undersigned counsel that he will join in this removal if and when he is properly served.

9.  The plaintiff instituted the above styled action in the Circuit Court of Lauderdale County, Alabama, against PFL, Transamerica and Pettiti. The plaintiff seeks to recover against Defendants based upon claims for breach of contract, bad faith, misrepresentation, negligence and wantonness.

10. Plaintiff has not substituted any real party for any fictitious party identified in the Complaint. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

### B.  THE JURISDICTIONAL AMOUNT IN CONTROVERSY IS MET

11. The amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Plaintiff seeks a trial by jury to recover compensatory and punitive damages against all Defendants "in an amount the jury deems just under the circumstances" (Complaint ¶¶ 18, 22, 27, 31, and 35).

12. In this case, the amount in controversy clearly exceeds $75,000. The policy at issue was a Long Term Care policy. The plaintiffs allege that Braswell applied for the policy in July 1992 and paid an annual premium of $910 until August 1995 when the premium increased to $1,107 (Complaint ¶¶6-8). The policy's long term care benefit is $58 per day with no lifetime limit on the number of days the benefit will be paid and no lifetime limit on the maximum amount that would be paid. Thus, if the insured, Braswell, were to have become confined to a long term care facility, the policy could pay a total of $21,170 per year in long term care benefits pursuant to the terms and conditions of the policy. The policy also contained a prescription drug benefit

3

such practice allows the Plaintiff to "have his cake and eat it too." In other words, the Plaintiff effectively prevents federal jurisdiction by failing to demand a specific monetary figure, while making it possible for the jury to return a verdict well in excess of [the statutory amount.] Such an approach is simply unfair and will not be permitted by this court. Id. at 1415-16.

Likewise, the United States District Court for the Northern District of Alabama reviewed the propriety of removal of an action which did not contain a specific *ad damnum* in the complaint in Kilpatrick v. Evy Construction Co., Inc., 708 F.Supp. 1241 (N.D. Ala. 1989). The Court found that a complaint not seeking a sum specific, would yield to allegations of jurisdictional limit in the Notice of Removal. Id. at 1242-43. See also Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1358 (11th Cir. 1996)(overruled on other grounds, Cohen v. Office Depo, Inc., 204 F. 3d 1069, 1074 (11th cir. 2000).[1]

15.     In Tapscott the Eleventh Circuit held that when the Plaintiffs' demand is unspecified, like here, **a lower burden of proof to establish removal jurisdiction is warranted.** Id. at 1357 (emphasis added):

> Where, as here, there is an unspecified claim for damages, however, a removing defendant need not meet the strict "legal certainty" standard articulated above. Instead, a removing defendant need only show "by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement."

---

[1] In Cohen, the Eleventh Circuit Court of Appeals overruled that portion of the Tapscott opinion allowing the aggregation of punitive damages in a class action case to determine whether the amount in controversy requirement for diversity removal had been met. The Cohen ruling did not effect that portion of Tapscott relating to the removing defendant's burden of proof as to unspecified damages.

5

Lowe's OK'D Used Cars, Inc. v. Acceptance Ins. Co., 995 F.Supp. 1388 (M.D.Ala. 1998) (quoting Tapscott, 77 F.3d at 1357). Here, the preponderance of the evidence establishes that the jurisdictional requirement is satisfied.

16.     Historically, fraud claims such as those asserted in the Complaint, where plaintiff has prevailed, have routinely resulted in verdicts exceeding the $75,000 jurisdictional requirement. Thus, defendant asserts that this court should take judicial notice that based on the nature of the claims asserted and the relief sought, the amount in controversy is satisfied.

To aid the court in determining whether the requisite amount in controversy has been satisfied, "the court should look for guidance to decisions rendered in cases of the same type of suit." Bolling v. Union Nat. Life Ins. Co., 900 F.Supp. 400, 404 (M.D.Ala. 1995), citing, Steel v. Underwriters Adjusting Co., Inc., 649 F.Supp. 1414 (M.D.Ala. 1986). A cursory review of the recent reported decisions involving jury awards in fraud cases substantiates taking judicial notice that the amount in controversy exceeds the jurisdictional requirement.[2]

---

[2] See Foremost Insurance Company v. Parham, 693 So.2d 409 (Ala. 1997) (This was a case brought by two separate Plaintiffs concerning whether they had been provided coverage for "other structures" under their homeowners policy. Initially, each plaintiff received a punitive damage award of $7,500,000.00 based on alleged misrepresentations and/or suppressions. The trial court subsequently reduced these two punitive damage verdicts to $3,250.000.00 a piece, based on economic damages of $1,868.30 and $1,429.43 respectively. On appeal, the Supreme Court reduced the punitive damage awards to $175,000.00 and $173,000.00 respectively. Even after significant remittitur, the jury award in this fraud case far exceeds the jurisdictional requirement); First Commercial Bank v. Spivey, 694 So.2d 1316 (Ala. 1997)(This is another fraud case concerning a bank's alleged fraudulent dispersal of a construction loan proceeds to creditors of the borrower. A jury verdict was returned of $500.000.00 in compensatory damages, principally comprised of mental anguish, and $500,000.00 in punitive damages based on alleged misrepresentations and suppressions. This verdict was upheld by the Alabama Supreme Court); Hillcrest Center, Inc. v. Rone, 711 So.2d 901 (Ala. 1997) (Based on claims of misrepresentation with regard to the adequacy of parking, a jury awarded $47,000.00 in compensatory damages and an additional $200,000.00 in punitive damages. The trial court subsequently reduced the punitive damage award to $130,000.00. On appeal, after noting that the reduced punitive damages still constituted approximately 60% of the net worth of the defendant, the Court further reduced the award to $94,000.00); Union Security v. Crocker, 709 So.2d 1118 (Ala. 1997) (This fraud action concerns misrepresentations which could have resulted in void insurance coverage. The jury awarded $5,000,000.00 in punitive damages based on these misrepresentations and fraud claims. The trial court reduced the verdict to $2,000,000.00. This award was affirmed by the Alabama Supreme Court but later remanded for a consideration light of the BMW v. Gore case by the United States Supreme Court. On remand, the Alabama Supreme Court reduced the verdict to $1,000,000.00); Life Insurance Company of Georgia v. Johnson, 701

Faced with similar ad damnum language in other cases, federal courts have routinely taken judicial notice of the large punitive damages verdicts in Alabama and sustained removal over a plaintiff's argument that the amount in controversy is insufficient. See e.g., Dennis v. CSX Transportation, Inc., CV 92-A-670-N (M.D. Ala. July 2, 1992); Jones v. Ford Motor Credit Co., CV 92-A-1099 N (M.D. Ala. Nov. 19, 1992); Steele v. Underwriters Adjusting Co., 649 F. Supp. 1414 (M.D. Ala. 1986).

In Boling v. Union Nat'l Life Ins. Co., 900 F. Supp. 400, 405 (M.D. Ala. 1995), Judge Albritton summed up the situation:

> It is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for punitive damages, the recovery, if plaintiff prevails, may very well exceed $50,000. [$75,000.00].

17. In Jones v. Ford Motor Co., CV 92-A-1900-N, decided November 19, 1992, the Court took judicial notice of the large punitive damage awards so common to Alabama practice:

> The court is entitled to take judicial notice of jury awards in state court from which this action was removed. Defendant correctly notes a recent case in Lowndes County whereby a plaintiff was awarded in excess of $6 million in punitive damages and $150,000

---

So.2d 524 (Ala. 1997). (This fraud action concerned misrepresentations and suppressions involving the sale of medicare supplement policy to a medicaid recipient. In other words, the alleged sale of a policy which had no value to the plaintiff. The jury returned a verdict of $250,000.00 in compensatory damages (again principally mental anguish) and $15,000,000.00 in punitive damages, which the trial court remitted to $12,500,000.00. The Alabama Supreme Court further remitted the punitive damage award to $5,000,000.00. On remand from the United States Supreme Court, the punitive damages was further reduced to $3,000,000.0). Life Insurance Company of Georgia v. Parker, 726 So.2d 618 (Ala. 1998) (Here, an insured sued the insurer for fraud in connection with the replacement of various policies with a new graded death benefit policy. The jury awarded $4,276.00 in compensatory damages and $200,000.00 in punitive damages. This punitive damages award was reduced to $150,000.00); Liberty National Life Insurance Company v. White, 1999 WL378495 (Ala. Civ. App. June 11, 1999) (In this case, the insured brought a misrepresentation and suppression claim against the insurance company based on misrepresentations made at the time of the sale of the subject life insurance policy. The jury returned a verdict for $1,350.00 in compensatory damages and $200,000.00 in punitive damages. The trial court remitted the punitive damages to $150,000.00 and the Alabama Court of Civil Appeals affirmed the trial court). In each of the above instances, similar fraud claims have resulted, in verdicts well in excess of the jurisdictional requirement, even after these verdicts were remitted.

in compensatory damages for a claim involving fraud by a lender. <u>Union Mortgage Co. v. Barlow</u>, 595 So.2d 1335 (Ala. 1992). Defendant further cites several other Alabama case involving fraud charges, whose jury verdicts greatly exceed $50,000.

Thus, in the case at bar, this Court should take judicial notice that Plaintiff's claim for fraud, suppression, deceit and conspiracy clearly satisfy the requisite amount in controversy.

**C.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET**

18.    Defendants have filed no pleadings or papers in this action in the state court. The time Defendants are required to answer or plead in response to the Complaint has not expired.

19.    This action is being removed pursuant to 28 U.S.C. §1446(a) and (b), within one year after the commencement of this action.

20.    A true and correct copy of this Notice of Removal shall be filed with the Clerk of the Circuit Court of Lauderdale County, Alabama, in accordance with 28 U.S.C. §1446(d).

21.    As set forth above, diversity of citizenship exists between all proper parties in this case, and pursuant to 28 U.S.C. §§1332, 1441 and 1446, as amended, this case is removed to this Court.

*/s/ Charles Stewart*
Charles D. Stewart (STE010)
Steve R. Burford (BUR061)
Attorneys for Defendant Transamerica Life Insurance Company

<u>OF COUNSEL</u>:

**SPAIN & GILLON, L.L.C.**
The Zinszer Building
2117 2nd Avenue, North
Birmingham, AL   35203
Telephone:    (205) 328–4100
Facsimile:    (205) 324–8866

8



## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**LORENE E. BRASWELL** by and through **BARBARA MONROE**, her daughter and next friend,

Plaintiff,

VS.                                CIVIL ACTION NO. CV01-650

**PFL LIFE INSURANCE COMPANY; TRANSAMERICA LIFE INSURANCE COMPANY; ANTHONY PETITTI; DEFENDANT NUMBER 1**, whether singular or plural, entity or individual, being those Defendants who or which have liability to the Plaintiff for any of the claims set forth in this complaint or in any amended complaint; **DEFENDANT NUMBER 2**, whether singular or plural, Plaintiff hereby intending to designate the entity or entities, person or persons who consciously, deliberately, oppressively, intentionally, fraudulently and/or wantonly misrepresented material facts which caused or contributed to cause injuries and damages to Plaintiff as set forth in this complaint; **DEFENDANT NUMBER 3**, whether singular or plural, Plaintiff hereby intending to designate the entity or entities, person or persons who consciously, deliberately, oppressively, intentionally, fraudulently and/or wantonly suppressed material facts which caused or contributed to cause injuries and damages to Plaintiff as set forth in this complaint; **DEFENDANT NUMBER 4**, whether singular or plural, Plaintiff hereby intending to designate the entity or entities, person or persons whose negligence or other wrongful conduct caused injuries and damages to Plaintiff as set forth in this complaint; **DEFENDANT NUMBER 5**, whether singular or plural, Plaintiff hereby intending to designate the entity or entities, person or persons whose wantonness or other wrongful conduct caused injuries and damages to Plaintiff as set forth in this complaint; **DEFENDANT NUMBER 6**, whether singular or plural, Plaintiff hereby intending to designate the entity or entities, person or persons who acted in concert to accomplish and commit the wrongful conduct and conspiracy against Plaintiff as set forth in this complaint; **DEFENDANT NUMBER 7**, whether singular or plural, Plaintiff hereby intending to designate that entity which is the correct legal description of the entity described or referred to as PFL Life Insurance Company; **DEFENDANT NUMBER 8**, whether singular or plural, Plaintiff hereby intending to designate that entity which is the correct legal description of the entity described or referred to as Transamerica Life Insurance Company; **DEFENDANT NUMBER 9**, whether singular or plural, Plaintiff hereby intending to designate that entity or those entities other than those described above who or which is a successor in interest to any entity described herein. Plaintiff avers the identity of the fictitious party Defendants are otherwise unknown at this time or, if their names are known, their identity as proper party Defendants are not known and their true names will be added by amendment when ascertained,

**Defendants.**

**FILED IN OFFICE**

OCT 5 - 2001

1

## COMPLAINT

COMES NOW the Plaintiff in the above-styled cause and claims of the Defendants, both named and numbered, as follows:

### PARTIES AND STATEMENT OF FACTS

1. Plaintiff, Lorene E. Braswell, is an 82-year-old widow residing in Lauderdale County, Alabama with her disabled daughter, Imogene Kemp. Barbara Monroe is an adult resident citizen of Colbert County, Alabama and brings this lawsuit as the daughter and next friend of Lorene Braswell.

2. Defendant, PFL Life Insurance Company (hereinafter sometimes referred to as PFL) is a corporation organized and existing under the laws of the State of Iowa, qualified to do business in the State of Alabama, and engaged in the business of selling insurance, including long term care insurance. On or about December 22, 2000, PFL Life Insurance Company changed its name or was acquired by Transamerica Life Insurance Company to be effective March 1, 2001. Transamerica Life Insurance Company is the successor in interest to PFL Life Insurance Company.

3. Defendant, Transamerica Life Insurance Company (hereinafter sometimes referred to as Transamerica) is a corporation organized and existing under the laws of the State of Iowa, qualified to do business in the State of Alabama, and engaged in the business of selling insurance, including long term care insurance. Transamerica Life Insurance Company is the successor in interest to PFL Life Insurance Company.

4. Defendant, Anthony Petitti, is believed to be a resident of Lauderdale County, Alabama. Mr. Petitti sold long-term care insurance and was an agent for PFL Life Insurance Company. At all times complained of herein, Mr. Petitti was acting within the line and scope of his employment with PFL Life Insurance Company in the marketing, servicing, and sale of the subject policy.

5. For the last few years Lorene Braswell has suffered from cognitive impairment, progressively deteriorating in her intellectual capacity. Mrs. Braswell's cognitive impairment results

2

from either Alzheimer's disease, a similar form of senility or irreversible dementia. Her cognitive impairment manifests itself with short-term memory loss, and loss of orientation and reasoning.

6. On July 30, 1992, Lorene Braswell applied for long-term care insurance with PFL Life Insurance Company. The agent was Anthony Petitti who represented the PFL policy would provide benefits in the event she became disabled and unable to care for herself. In reliance upon these representations, Lorene Braswell purchased a PFL long-term care insurance policy.

7. PFL Insurance Company issued certificate number 740250561950 insuring Lorene Braswell with an effective date of August 1, 1992. Premiums were to be paid annually in the amount of $910 per year.

8. Lorene Braswell timely paid all premiums due under the policy for several years. During 1995 Lorene Braswell timely exercised her guaranteed purchase option under the policy which amended the daily benefit to $58. This endorsement to the policy became effective August 1, 1995, raising her annual premium to $1,107.

9. During 1998 and 1999, Lorene Braswell became increasingly forgetful, demonstrating early signs of dementia, Alzheimer's or a similar form of senility. These conditions suffered by Lorene Braswell were progressive, manifesting symptoms slowly as she increasingly suffered impairment of her short term and long-term memory. As her forgetfulness increased, day-to-day tasks she previously performed with regularity diminished.

10. One of the tasks Lorene Braswell forgot was the payment of her annual premium for long term care benefits to PFL. When her premium notice arrived for the August 1, 1999 annual payment, Lorene Braswell forgot to make her payment, which is consistent with the medical impairment from which she suffered and is covered under the long-term care policy.

11. Lorene Braswell's family tried to assist her in both her daily life and fulfilling her bill paying obligations. Barbara Monroe was unaware her mother had not made her annual premium payment for long-term care benefits. On October 5, 1999, 35 days after the last day the payment could be timely made under the policy, Barbara Monroe discovered the premiums had not been paid and immediately paid her mother's long-term care insurance premium payment.

3

12.     On October 13, 1999, PFL returned the premium payment while obtaining Lorene Braswell's medical records to underwrite her application for reinstatement of the policy. After obtaining Lorene Braswell's medical records, which confirmed she suffered from dementia, a condition covered by the policy, PFL refused to reinstate the policy and failed to provide benefits under the long-term care policy even though the basis for refusing to underwrite her policy was a condition covered by the policy.

13.     PFL sold Lorene Braswell a long-term care insurance policy which provided benefits for cognitive impairment which, of course, includes forgetfulness and memory lapses. When Lorene Braswell suffered these very impairments, becoming forgetful and forgetting to make her premium payments, PFL lapsed her policy, refused to reinstate the policy and failed to provide benefits under a policy which covered the very condition that caused her to forget to make her premium payments. PFL knew the condition suffered by Lorene Braswell could not have manifested itself in 35 days.

14.     Plaintiff believes other individuals have suffered similar mistreatment from PFL who have planned, schemed or benefited by failing to initiate procedures to prevent persons like Lorene Braswell from having their long-term care insurance coverage lapse.

## COUNT I
## BREACH OF CONTRACT

15.     Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 14 and incorporates them by reference herein.

**16.     Defendants PFL, Transamerica and Defendants Numbered 1 through 9** entered into an agreement with Lorene Braswell to provide long-term care insurance, which covers, among other things, dementia. **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** breached the agreement entered into between the parties as follows:

(a) Failing to provide benefits as required by the policy;

(b) Failing to implement reasonable procedures to prevent an insured who suffers from cognitive impairment and forgetfulness from lapsing their policy;

(c) Failing to reinstate the policy.

4

17.     As a direct and proximate result of the breach of contract by **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** Plaintiff has suffered loss and damages as follows:

    (a) Failing to receive benefits provided under the policy;

    (b) Payments of thousands of dollars for premiums which have been lost;

    (c) Emotional distress from losing her insurance and being underinsured.

18.     The breach of contract herein alleged is part of a pattern and practice of wrongful conduct perpetrated by **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** not only upon Plaintiff, but also upon other individuals similarly situated.

**WHEREFORE,** Plaintiff demands judgment against **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** for all damages allowed by law, including compensatory damages in an amount the jury deems just under the circumstances.

## COUNT II
## BAD FAITH

19.     Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 18 and incorporates them by reference herein.

20.     **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** have an express and implied duty of good faith to investigate and fairly evaluate the claims made by Plaintiff. The actions of Defendants are without basis in law or fact. Defendants have exercised bad faith by their failure to reasonably investigate the claim and their denial of Plaintiff's claim. The actions of **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** are in bad faith, wanton, willful, intentional, arbitrary and capricious.

21.     As a direct and proximately result of the bad faith of **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** Plaintiff has suffered damages as set forth in paragraph 17 and incorporated by reference herein.

22.     The bad faith herein alleged is part of a pattern and practice of wrongful conduct

perpetrated by **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** not only upon Plaintiff, but also upon other individuals similarly situated.

**WHEREFORE**, Plaintiffs demand judgment against **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** for compensatory and punitive damages in an amount the jury deems just under the circumstances.

## COUNT III
## MISREPRESENTATION OF MATERIAL FACT

23. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 22 and incorporates them by reference herein.

**24. Defendants PFL, Transamerica, Petitti and Defendants Numbered 1 through 9** misrepresented material facts to Plaintiff, Lorene Braswell, in connection with the sale, servicing and administration of the long-term care insurance policy made the basis of this complaint. Lorene Braswell relied upon the misrepresentations by Defendants to her detriment.

25. The misrepresentations of material facts made by the Defendants to the Plaintiff were made intentionally, deliberately, consciously, maliciously, oppressively, fraudulently and/or wantonly and include, but are not limited to:

 (a) Represented the PFL policy would provide benefits in the event she became disabled and unable to care for herself.

26. As a direct and proximate result of the misrepresentation of material fact by **Defendants PFL, Transamerica, Petitti and Defendants Numbered 1 through 9,** Plaintiff has suffered damages as set forth in paragraph 17 and incorporated by reference herein.

27. The misrepresentation of material fact herein alleged is part of a pattern and practice of wrongful conduct perpetrated by **Defendants PFL, Transamerica, Petitti and Defendants Numbered 1 through 9,** not only upon Plaintiff, but also upon other individuals similarly situated.

**WHEREFORE**, Plaintiff demands judgment against **Defendants PFL, Transamerica, Petitti and Defendants Numbered 1 through 9** for compensatory and punitive damages in an

6

amount the jury deems just under the circumstances.

## COUNT IV
## NEGLIGENCE

28. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 27 and incorporates them by reference herein.

29. **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** were negligent in the sale, servicing and administration of the long-term care insurance policy made the basis of this complaint. The negligence includes, but is not limited to:

   (a) Failing to provide benefits as required by the policy;
   (b) Failing to implement reasonable procedures to prevent an insured who suffers from cognitive impairment and forgetfulness from lapsing their policy;
   (c) Failing to reinstate the policy.

30. **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** each and all are liable for any and all of the aforedescribed negligent acts and/or omissions which are the direct and proximate cause of the damages suffered by Lorene Braswell as set forth in paragraph 17 and incorporated by reference herein.

31. The negligence herein alleged is part of a pattern and practice of wrongful conduct perpetrated by **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** not only upon Plaintiff, but also upon other individuals similarly situated.

**WHEREFORE,** Plaintiff demands judgment against **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** for all damages allowed by law, including compensatory damages, in an amount the jury deems just under the circumstances.

## COUNT V
## WANTONNESS

32. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 31 and incorporates them by reference herein.

7.

**33.** **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** were wanton in connection with the sale, servicing and administration of the long-term care insurance policy made the basis of this complaint. The wantonness includes, but is not limited to:

(a) Failing to provide benefits as required by the policy;

(b) Failing to implement reasonable procedures to prevent an insured who suffers from cognitive impairment and forgetfulness from lapsing their policy;

(c) Failing to reinstate the policy.

**34.** **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** each and all are liable for any and all of the aforedescribed wanton acts and/or omissions which are the direct and proximate cause of the damages suffered by Lorene Braswell as set forth in paragraph 17 and incorporated by reference herein.

35. The wantonness herein alleged is part of a pattern and practice of wrongful conduct perpetrated by **Defendants PFL, Transamerica and Defendants Numbered 1 through 9,** not only upon Plaintiff, but also upon other individuals similarly situated.

**WHEREFORE,** Plaintiff demands judgment against **Defendants PFL, Transamerica and Defendants Numbered 1 through 9** for all damages allowed by law, including compensatory and punitive damages, in an amount the jury deems just under the circumstances.

**COUNT VI**
**FICTITIOUS PARTIES**

36. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1 through 35 and incorporates them by reference herein.

37. This Count of the complaint is a fictitious party count. Those Defendants liable under this Count are those Defendants who or which are liable to the Plaintiff under any theory of law advanced in the complaint or in any amended complaint, and include those Defendants which Plaintiff has attempted to described in the style or caption of the complaint. These Defendants are otherwise unknown at this time, but will be added by amendment when ascertained.

8

**WHEREFORE**, Plaintiff demands judgment against **Defendants Numbered 1 through 9**, for such compensatory and punitive damages as the jury deems just under the circumstances.

Joseph M. Cloud
Attorney for Plaintiff

**CLOUD, McKINNEY, BRASWELL & PARKER, L.L.C.**
521 Madison Street, 2nd Floor
Post Office Box 428
Huntsville, Alabama 35804
(256) 534-0534

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

Joseph M. Cloud

DEFENDANTS:

PFL Life Insurance Company
c/o Its Agent for Service of Process
C T Corporation
60 Commerce Street
Montgomery, AL 36104-3530

Transamerica Life Insurance Company
c/o Its Agent for Service of Process
C T Corporation
60 Commerce Street
Montgomery, AL 36104-3530

Anthony Petitti
950 Brookhill Drive
Killen, AL 35645

9